Sheldon **BARON** and Earl Salsman, Plaintiffs/Respondents,

v.

Samuel **LERMAN**, Bernice Lerman, Paul Lerman and L & L Packaging, Defendants/Appellants.

No. 50637.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 23, 1986.

Rehearing Denied Nov. 4, 1986.

Arthur G. Muegler, Jr., St. Louis, for defendants/appellants.

Mark E. Goodman, St. Louis, for plaintiffs/respondents.

KAROHL, Presiding Judge.

Clients appeal jury verdict and judgment for plaintiffs who claimed fees for accounting and tax services rendered between 1980 and 1982. Plaintiffs brought a three count suit in quantum meruit. Count I was against Samuel and Bernice Lerman; Count II against Samuel and Paul Lerman d/b/a "Samuel Lerman & Associates", a general partnership; and Count III against L & L Packaging Company and Samuel Lerman. The jury found for plaintiffs on their claims and against defendants on their counterclaim against plaintiffs for tortious conversion of business records. We reverse and remand.

Plaintiffs Sheldon Baron and Earl Salsman are general partners in their accounting partnership, Baron, Salsman & Company. Sheldon Baron first began providing accounting services for defendant Samuel Lerman in 1961, while working for another accounting firm. Baron became a partner in this firm, which split amicably in 1974. From 1974 to 1980 Baron rendered accounting services to Samuel Lerman.

**74**

Sheldon Baron and Earl Salsman formed Baron, Salsman & Company on December 15, 1980. The new partnership continued to provide accounting and financial services to Samuel Lerman, his wife Bernice, his son Paul, Samuel Lerman & Associates, L & L Packaging Company and related businesses until 1982. These services included bookkeeping, financial report preparation, income tax preparation and financial consulting. Plaintiffs billed Lerman and his businesses on an hourly charge based on time records.

This case arose over disputed billings between the parties during 1980–1982. Plaintiffs submitted as evidence invoices for accounting services, contending they had not been paid. Defendants responded that the hourly rates and the number of hours charged were both excessive. Defendants further counterclaimed against plaintiffs, arguing that Sheldon Baron had refused, after demand, to return Samuel Lerman's business records and documents. Defendants referred in particular to their Exhibit Z, an original executed tissue copy of the Samuel Lerman & Associates partnership agreement. The jury returned verdicts against defendants for the unpaid balances owing plaintiffs; $1,712 against Samuel and Bernice Lerman, $4,562 against Samuel and Paul Lerman, $1,545 against L & L Packaging Company. It also found against all defendants on their counterclaim against plaintiffs for tortious conversion of Exhibit Z.

Defendant argues ten points on appeal: (1) defendants were entitled to judgment as a matter of law on their counterclaim because evidence of conversion was unrefuted; (2) plaintiffs failed to present evidence that all partners of Baron, Salsman & Company were joined as parties and so lacked standing to sue defendants for a debt due; (3) plaintiffs failed to establish a prima facie case of quantum meruit as there was no expert testimony establishing whether hours and rates charged were reasonable and invoices were submitted as evidence without adequate foundation as to their reasonableness; (4) the trial court materially failed to follow MAI 2.00 and 2.11 "packaging rules" for instructions and verdict forms submitted to the jury; (5) using MAI 36.01 instead of MAI 36.05 was prejudicial error because, based on plaintiffs' petition, the jury was required to make separate findings of liability against each defendant; (6) it was error to refuse defendants' proffered converse verdict directors (No. 7 and 9); each of the verdict directors misstated the law, deviated from MAI format, are unsupported by the evidence, fail to specify against which defendant a verdict should be entered, fail to include a definition of "agency" and require a verdict on "Counts I, II or III" which counts are not otherwise identified; (10) the court erred in striking from defendants' answer a statute of frauds affirmative defense and in giving an instruction which unlawfully tries to enforce Samuel Lerman's verbal guarantee to pay. We find defendants' sixth point dispositive.

■ Defendants assert that the court erred in refusing their proffered converse instructions to plaintiffs' verdict directors. The verdict directors and refused converse instructions are as follows:

### INSTRUCTION NO. 7 [Count I]

Your verdict must be for plaintiffs on Count I if you believe:

First, plaintiffs furnished accounting services to defendants Samuel Lerman and Bernice Lerman, and

Second, defendants Samuel Lerman and Bernice Lerman accepted such services, unless you believe that plaintiffs are not entitled to recover by reason of Instruction Number 16.

### INSTRUCTION NO. 16
#### [affirmative defense]

Your verdict must be in favor of defendant Samuel Lerman and defendant Bernice Lerman and against plaintiffs if you believe the services actually rendered by plaintiffs were not necessary or beneficial to said defendants.

### Refused INSTRUCTION AA
### [converse to No. 7]

Your verdict must be for defendant Samuel Lerman and defendant Bernice Lerman unless you believe said defendants accepted the accounting services rendered by plaintiffs.

### INSTRUCTION NO. 10 [Count II]

Your verdict must be for plaintiffs on Count II if you believe:

First, plaintiffs furnished accounting services to defendants Samuel Lerman and Paul Lerman, doing business as Samuel Lerman & Associates and

Second, defendants Samuel Lerman and Paul Lerman doing business as Samuel Lerman & Associates accepted such services, unless you believe that plaintiffs are not entitled to recover by reason of Instruction Number 17.

### INSTRUCTION NO. 17
### [affirmative defense]

Your verdict must be in favor of defendant Samuel Lerman and defendant Paul Lerman and against plaintiffs if you believe the services actually rendered by plaintiffs were not necessary or beneficial to said defendants.

### Refused INSTRUCTION NO. DD
### [converse to No. 10]

Your verdict must be for defendant Samuel Lerman and defendant Paul Lerman unless you believe said defendants accepted the accounting services rendered by plaintiffs.

### INSTRUCTION NO. 14 [Count III]

Your verdict must be for plaintiffs on Count III if you believe:

First, plaintiffs furnished accounting services to defendant L & L Packaging Company,

Second, defendant L & L Packaging Company accepted such services, unless you believe that plaintiffs are not entitled to recover by reason of Instruction Number 18.

### INSTRUCTION NO. 18
### [affirmative defense]

Your verdict must be in favor of defendant Samuel Lerman and defendant L & L Packaging Company and against plaintiffs if you believe the services actually rendered by plaintiffs were not necessary or beneficial to said defendants.

### Refused INSTRUCTION II
### [converse No. 14]

Your verdict must be for defendant Samuel Lerman and Defendant L & L Packaging Company unless you believe said defendants accepted the accounting services rendered by plaintiffs.

Plaintiffs respond that instructions 16, 17 and 18 are converse instructions and defendants are not entitled to more. We disagree. Defendants' amended answer asserts several affirmative defenses, including those alleging plaintiffs' accounting services were not necessary or beneficial to defendants. Thus, Instructions 16, 17 and 18 instruct the jury on defendants' affirmative defenses. They are not, as plaintiff asserts, converse instructions.

The general comment on converse instructions, MAI 33.01 Missouri Approved Instructions, Third Edition, p. 487, provides that "a defendant is entitled to a converse of plaintiff's verdict directing instruction." *Frazier v. Ford Motor Company*, 276 S.W.2d 95 (Mo.1955). Defendants offered a true converse instruction on one of the elements essential to plaintiff's recovery. *See* MAI 33.01 Third Edition p. 487. As such instruction is required if requested a defendant is entitled to have it submitted. *Frazier*, 276 S.W.2d at 102.

Plaintiffs argue that the trial court's refusal is not erroneous because the instructions as a whole properly cover the theory of defense and, further, that defendants were in no way prejudiced by omitting their converse instruction. We disagree. Under MAI 33.01, defendant is entitled to submit a true converse of any element in plaintiffs' submitted instruction. Of necessity,

such a converse requires that the jury find anew a disputed fact. Here, defendants' true converse instruction required the jury to decide again whether plaintiffs' services were accepted by the defendants. To say that the jury has already found this fact once is no answer to MAI's provision that a defendant is entitled to submit a converse verdict directing instruction. Under plaintiffs' proposition, defendants' entitlement under MAI to submit a proper converse instruction would be emasculated on the theory that the submitted instructions already covered the theory of defense. The theory of MAI is contrary.

In addition, in answer to plaintiffs' assertion that defendants suffered no prejudice, we note that "[A]ll deviations from the straight and narrow path prescribed in MAI will be presumed prejudicial unless it is made perfectly clear that no prejudice resulted." *Scheele v. American Bakeries Company*, 427 S.W.2d 361, 364 (Mo.1968). We cannot say that no prejudice resulted from failing to submit a jury instruction to which defendant was entitled. We reverse and remand.

We address only those remaining points which may arise on retrial. Defendants first point asserts that they are entitled to a directed verdict or judgment notwithstanding the verdict on their counterclaim because evidence of conversion was not refuted. A directed verdict is a drastic remedy and should only be granted where reasonable and honest men could not differ on a correct disposition of the case. *Jarrell v. Fort Worth Steel and Manufacturing Co.*, 666 S.W.2d 828, 833 (Mo.App. 1984). Lerman, as the proponent of his counterclaim, has the burden of proof and a verdict will not ordinarily be directed in favor of the party having the final burden of proof. *Medlock v. Farmers' State Bank of Texas*, 696 S.W.2d 873, 881 (Mo. App.1985) and *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo.1972). This is particularly so where the proponent relies upon oral evidence. *Hodges v. Hodges*, 692 S.W.2d 361, 366 (Mo.App.1985); *Price v. Bangart Brothers Road Builders, Inc.*, 490 S.W.2d 53, 57 (Mo.1973). Similarly, a

motion for judgment notwithstanding the verdict should be granted only when all of the evidence and reasonable inferences to be drawn therefrom are so strongly against the opponent of the moving party's case that there is no room for reasonable minds to differ. *Commerce Bank of Lebenon, N.A. v. Berry*, 692 S.W.2d 830, 831 (Mo.App.1985). These tests are not met.

The evidence would have to unequivocally prove conversion, which requires a tortious taking, the use or appropriation to the use of the person in possession indicating a claim of right opposing the rights of the owner, or a refusal to surrender possession to the owner on demand. *Hardesty v. Mr. Cribbin's Old House, Inc.*, 679 S.W.2d 343, 347 (Mo.App.1984).

The evidence shows that Samuel Lerman had delivered items of tangible personal property, such as business records, contracts and other documents, to Sheldon Baron for his use in accounting. These items included defendants' Exhibit Z, a tissue copy of a partnership agreement with original signatures on it. Samuel Lerman testified that he demanded Sheldon Baron return all his documents and records, conceding that Sheldon Baron returned most of what he had. In contrast, Baron testified that he was only asked to return certain tax returns. Baron retained his work papers, however, which included Exhibit Z, found in plaintiffs' files at trial. Baron testified that Exhibit Z was never specifically requested, that he returned all documents he had, that he retained only work papers, that he considered Exhibit Z to be only a copy, and that he only claimed ownership of this paper if it were a copy. This evidence shows conflicting oral testimony regarding demand and refusal to return the property. Under the standards enunciated above, we conclude that the trial court was correct to deny defendants' motions.

In their second point, defendants assert that plaintiffs had no standing to sue to recover a debt due their partnership because they failed to present evidence

that all partners of Baron, Salsman & Company were joined as plaintiffs. They cite *Allgeier, Martin & Associates v. Ashmore,* 508 S.W.2d 524, 525 (Mo.App.1974). That case does not apply here. There, the sole named plaintiff was "Allgeir, Martin and Associates." The court held that "[a]bsent statutory authority, a partnership cannot sue in the firm name and a judgment rendered for a partnership so suing will be reversed on appeal (cite omitted) on the principal that a partnership has no legal existence apart from its members, but is a mere ideal entity (cite omitted)." *Ashmore,* 508 S.W.2d at 525. Missouri follows the common law or aggregate theory of partnership rather than the entity theory. Plaintiffs have here sued in their individual names, doing business as partners and have standing necessary to recover a debt due their partnership.

Third, defendants claim that plaintiffs failed to make a submissible case on their quantum meruit claim because they failed to establish by expert testimony the reasonableness of the hours charged and their rates. Plaintiffs billed at $60 per hour for professional accounting services, and $30 per hour for non-professional accounting services and $18 per hour for clerical and secretarial services.

■ The only testimony regarding the reasonableness of these rates was by Sheldon Baron, who testified over objection as to what services he performed and what he thought they were worth. Baron testified that he had graduated from Washington University School of Business, majoring in business, and passed the requisite CPA exam in 1966. He had worked as employee and partner in various St. Louis area accounting firms since that date. He discussed the general services his firm could provide for its clients and the particular services performed for defendants. Quantum meruit recovery is limited to the reasonable value of services performed, plaintiff has the burden of proving this reasonable value, and expert testimony is required to assist the finder of fact in determining reasonableness. *Curnow v. Sloan,* 625 S.W.2d 605, 607 (Mo. banc 1981).

Defendants argue that Baron was not competent to provide the requisite expert testimony on the reasonable number of hours and fees. Over defendants' many objections, the trial court permitted Baron to testify on the following grounds:

The Court: In court, without the jury. By way of clarification which may or may not be needed in regard to Mr. Baron's testifying as to the value of his services, it is the Court's position as previously stated, I believe, but if not I will restate it, that the party may testify as to the value of his own services. By the same token, he is not—the party himself is not testifying as an expert unless qualified as one, but testimony as to the value of his services may stand.

[Defendants' attorney]: Just for clarification, Judge, the Court is not concluding that Mr. Baron was testifying as an expert in the field of accountancy; is that it?

The Court: Concluding as to what services he performed or says he performed and what his charges were and what he thinks they were worth. He is not testifying as an independent expert.

The Supreme Court addressed this question in *Curnow v. Sloan,* 625 S.W.2d 605 (Mo. banc 1981). That case held that a plaintiff-doctor was qualified as an expert and could testify to establish the reasonableness of his fee, given his first hand knowledge of the case as well as his professional opinion. *Curnow,* 625 S.W.2d at 607. This rule has been followed by cases before and since. *Longmire v. Diagraph-Bradley Stencil Mach. Corp.,* 176 S.W.2d 635, 645 (Mo.App.1944); *Lange v. Kansas City Southern Railway Co.,* 290 S.W.2d 71, 72 (Mo.1959); *The Board of Trustees of North Kansas City Memorial Hospital v. Conway,* 675 S.W. 36, 40 (Mo.App.1984); *Glickert v. Soundolier, Inc.,* 687 S.W.2d 674, 677 (Mo.App.1985).

■ Defendant argues that the trial court did not admit Baron's testimony as that of an expert, but as that of a party

testifying as to the value of his services. This does not seem to be the case. In addition to the above, the court also said, "It's the Courts' ruling that he has already been established—his expertise is sufficiently established based upon his experience, and will take it subject to your objection. He may testify." The court correctly concluded that Baron was qualified to provide expert testimony on the value of his services. Further, we note that defendants did not question Sheldon Baron's expert qualifications, even when given the opportunity to do so. See *Curnow*, 625 S.W.2d at 607.

Defendants aver prejudicial error by the trial court in failing to "package" the jury instructions according to MAI 2.00. It appears that MAI packaging rules were not complied with in that each set of claims by plaintiffs were not stapled together with affirmative defenses, jury instructions, defendant's converse instructions and verdict form. "Where a Missouri Approved Instruction is applicable, its use is mandatory and failure to use the mandatory instruction is presumed to be prejudicial error." *Jarrell v. Fort Worth Steel*, 666 S.W.2d 828, 837 (Mo.App.1984) and Rule 70.01(C). We need not decide whether this error is sufficiently prejudicial to require reversal on retrial. Error on this claim may be avoided by following packaging rules.

■ Fifth, defendants complain that the trial court erred prejudicially by submitting verdict forms patterned after MAI 36.01 because MAI 36.05 was the correct form. MAI 36.05 describes a verdict form when plaintiff seeks to recover against two defendants, either or both of whom are liable. MAI 36.01 applies when all or none of defendants are liable. In this case, on each count, either both defendants or none are liable. MAI 36.01 was appropriate in that plaintiffs' theory of quantum meruit required that the jury could not render a verdict for plaintiff against any less than all defendants on any single count. *Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 87 (Mo.1967).

In points 7 to 9, defendants assert that the trial court erred by giving verdict directing instructions 7 as to Samuel and Bernice Lerman, 10 as to Samuel and Paul Lerman, and 13 and 14 as to Samuel Lerman and L & L Packaging Company. Defendants contend that these verdict directors are flawed in that; 1) they do not identify against which defendant the verdict is to be entered as required by *Bender v. Colt Industries*, 517 S.W.2d 705 (Mo. App.1974); 2) they lacked definition of "agency" (MAI 18.01 and 13.06) which is an essential element of plaintiffs' theory to seek a joint verdict against both defendants named in each verdict director; 3) they are confusing and create a roving commission because they refer to a verdict on "Counts I, II or III" to which there are no references elsewhere in any instruction or verdict forms; and, 4) there is no evidence in the transcript that L & L Packaging in fact existed during 1980–1982.

■ First, we find that instructions on "agency" were not required because agency was never an issue below. MAI 18.01 and related provisions must be submitted only where agency is an issue. *Restaurant Industries, Inc. v. Lum's*, 495 S.W.2d 668 (Mo.App.1973). As agency is not in issue, it was not, as defendants contend, an essential element of plaintiffs' theory to find a joint verdict against both named defendants and so was not improperly omitted.

Next, as already discussed, the verdict directors are proper (MAI 36.01) and need not identify against which of either defendants the verdict is to be entered when all or none of defendants are liable. *Tietjens*, 418 S.W.2d 75, 87 (Mo.1967) and *Dettler v. Santa Cruz*, 403 S.W.2d 651 (Mo.App. 1966). Defendants cite *Bender v. Colt Industries*, 517 S.W.2d 705 (Mo.App.1974) to require that, "when a verdict is against more than one defendant, the law requires the identification of the defendant against whom the verdict is entered". Such is not the holding in *Bender*, which requires only that "[i]n those cases where there is more than one defendant, clarity dictates that

each verdict directing instruction designate the party against whom the instruction is directed (citation omitted)." *Bender,* 517 S.W.2d at 708. *Bender* also is not on point as it involves two separate defendants, one or both of whom may be liable.

 We further find that the references to "Counts I, II, or III" in the verdict directors do not constitute prejudicial error. It must appear that the offending instruction misdirected, misled or confused the jury. *Essex v. Getty Oil Co.,* 661 S.W.2d 544 (Mo.App.1983). The verdict forms show that the jury understood what was meant by the "Counts" and defendant has shown no prejudice. We do not endorse the use of "Count I". We would find no prejudice in this case.

Finally, with regard to defendants' contention that plaintiffs failed to prove that L & L Packaging Company existed during 1980–1982, defendant failed to assert its lack of corporate existence in its pleadings as an affirmative defense as required by Rule 55.09. Further, in their Amended Answer, defendants admitted that plaintiffs performed certain accounting services for it during 1980 and 1981. Defendant cannot now require plaintiff to prove a corporate existence that it had not disputed earlier.

In their tenth and final point on appeal, defendants argue that the trial court erred in striking their statute of frauds affirmative defense prior to trial and in giving an instruction which, under § 432.010 RSMo 1978, unlawfully tried to enforce Samuel Lerman's oral promise to pay plaintiffs for their services to L & L Packaging. The trial court acted correctly because evidence showed that Lerman's interests were served by making the necessary promises to secure financial services for his corporation. "If the 'leading' or 'main' object of the promise is not to answer for the debt or obligation (of another) but rather to serve an interest of the promisor or if it directly benefits him, the promise is not within the statute (citation omitted)." *Carvitto v. Ryle,* 495 S.W.2d 109, 114 (Mo.App.1973). This case is not, as defendant asserts, governed by *Handy*

*Pantry Food Stores, Inc. v. Kwik Trip Markets, Inc.,* 692 S.W.2d 388 (Mo.App. 1985). That case found unenforceable, as within the statute of frauds, the oral promise of defendant corporation to pay the debt owed plaintiff corporation by an officer and shareholder of defendant.

Reversed and remanded.

SIMON and GARY M. GAERTNER, JJ., concur.